IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT C. ROGERS, Y33398, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| WARDEN CROW, C/O MIFLIN, C/O MEZZO, COUNSELOR BUCHANON, JANE DOE NURSE, LATOYA HUGHES, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 23-cv-1879-RJD

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Robert Rogers, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center (Pinckneyville), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Plaintiff alleges that since his arrival at Pinckneyville on April 29, 2023, he has repeatedly complained to staff about exposure to secondhand smoke in his cell that has worsened his COPD, asthma and emphysema. He seeks a prison transfer or parole, and monetary damages.

Plaintiff's Second Amended Complaint (Doc. 19) is now before the Court[1] for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the Illinois Department of Corrections and Wexford and this Court.

portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.  28 U.S.C. § 1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE SECOND AMENDED COMPLAINT

Plaintiff alleges that since his arrival at Pinckneyville on April 29, 2023, he has been complaining about exposure to secondhand smoke in his cell and the dayroom of his living unit. (Doc. 1 at 6).  He alleges that he first informed Defendant Miflin about smoke coming in his cell, and two inmates who smoked in his cell.  Miflin did nothing. He also informed Defendant Warden Crow.  Plaintiff then contacted Defendant Mezzo but received no assistance.  Plaintiff wrote Warden Crow in May, July, August, and September, but he has received no response or resolution of this issue.  (Doc. 1 at 4).

He alleges that the counselor (presumably Defendant Buchanon) claims that the prison is smoke free, but this is not true.  He also alleges that on September 5, 2023, he saw Jane Doe 2 (a nurse) for smoke exposure and difficulty breathing, but she did not perform tests to confirm smoke exposure.  (Doc. 19 at 4; Doc. 19-1 at 1-2).  Instead, she suggested that he write to the placement office to ask for a new cell placement.  He alleges he did this, but he was never relocated to a different cell.

Plaintiff also adds in a letter attached to his complaint that one of the cellmates who was smoking was moved out of his cell on May 9, 2023, and placed in segregation, which proves there was smoking in his cell.  In the letter, Plaintiff also discusses problems with access to the law library.  He says the law library elevator has been broken since July of 2023, and from that time to

present he has not been able to access the law library to research his claims. He believes this has disadvantaged him. He requests a transfer to another prison closer to his sister so that he can access a law library and she can help him research his claims.

In the demand for relief, Plaintiff states that he believes parole and the expungement of his record is the only solution because there are no Illinois prisons that are smoke free. (Doc. 1 at 6-7).

Based on the allegations in the Complaint, the Court will designate the following claims:

**Count 1:** **Eighth Amendment deliberate indifference claim against Defendants Miflin, Mezzo, Buchanon and Crow for failing to respond to Plaintiff's concerns about secondhand smoke;**

**Count 2:** **Eighth Amendment deliberate indifference claim against Defendant Jane Doe nurse for failing to perform any tests or to assist Plaintiff after breathing difficulty on September 5, 2023.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

**PRELIMINARY DISMISSALS**

Plaintiff named Latoya Hughes as a defendant in this lawsuit, but he does not clearly describe Hughes' personal involvement in the underlying events other than to state she has not investigated his issues. (Doc. 1 at 5). Hughes is the Acting Director of IDOC. Generally, high ranking prison administrators are not held personally responsible for inmate-specific issues at any given prison unless it is obvious that they had personal knowledge of a risk to the inmate, and they

deliberately chose not to act.  *See e.g., Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (public officials do not have a free-floating obligation to put things to rights, and officials such as the head of the department of corrections are entitled to relegate to prison staff the provision of adequate conditions of confinement and medical care).  Plaintiff does not provide any information about how Hughes might have been aware of his plight, or what she did in response.  The mere allegation that she should have investigated because she is the Director of IDOC is insufficient to establish her involvement in this matter.  Accordingly, Defendant Hughes is dismissed from this lawsuit without prejudice for failure to state a claim.

The Court also notes that both the Second Amended Complaint, and two letters Plaintiff submitted in the last few months (Docs. 17, 18), suggest that he is experiencing issues with his access to the prison law library, and to the Courts.  Although an inmate may be able to present a claim related to these issues, Plaintiff has not associated this issue with any named defendant, so this information is insufficient to proceed as a freestanding claim.  This claim also appears as though it may be entirely unrelated to the allegations about smoke exposure, other than the link to Plaintiff's difficulty pursuing grievances.  Without a common set of facts with the present lawsuit, Plaintiff would need to pursue any access to library or courts claim in a separate lawsuit.

## ANALYSIS

Plaintiff alleges that he has notified Defendants Miflin, Mezzo, Warden Crow and Counselor Buchanon of his issues with secondhand smoke in his cell, but they have not done anything to assist him.  As a result, his asthma, COPD, and emphysema, have gotten worse, and he has been required to use his inhaler more often.  He is now suffering from a more frequent cough, headaches, burning eyes, heaviness in his chest, nausea and difficulty breathing.  While the Eighth Amendment does not guarantee smoke free prisons, under existing precedent it is feasible

that an inmate could state a deliberate indifference claim related to smoke exposure if he can demonstrate that officials intentionally disregarded a risk to his health. *See e.g., Tellez v. Uchtman*, 2010 WL 746991 at *3-4 (S.D. Ill. March 1, 2010) (collecting cases on secondhand smoke exposure and serious medical conditions); *Powers v. Snyder*, 484 F.3d 929, 933 (7th Cir. 2007) (a prison is not required to provide a completely smoke-free environment unless smoke exposure exacerbates a medical condition).

For purposes of initial review, and based on Plaintiff's allegations, the Court will assume for the moment that he has identified serious medical conditions that have been exacerbated by smoke exposure in the form of asthma, COPD and emphysema. To prevail on an Eighth Amendment claim relative to these conditions, he still needs to establish that the defendants exhibited deliberate indifference to his exposure to secondhand smoke. *Lee v. Young*, 533 F.3d 505, 510-11 (7th Cir. 2008) (noting that the existence of severe asthma exacerbated by smoke is only part of a deliberate indifference claim, an inmate still must show deliberate indifference by a prison official to his placement and smoke exposure).

Plaintiff alleges that he notified Defendants Miflin and Mezzo (shift officers in his living unit) about his sensitivity to smoke, but both officers refused to assist him. Ultimately, this claim will turn on the facts that are developed about Miflin and Mezzo's knowledge of his condition, and on their precise response. At this preliminary juncture, the claim is sufficient as to these two defendants.

Plaintiff has also alleged that Defendant Crow, the Warden, has not responded to his repeated correspondence about smoke exposure and his health. He alleges that he has written Crow at least four times in the last few months, but he has not received any response. He does not detail if the written notifications have taken the form of a grievance, or some other method such

as a letter. Generally, the Warden of a facility can defer to daily correctional staff to address inmate problems, and a few pieces of written correspondence are not enough to sustain a § 1983 claim for personal involvement. *See e.g., Burks*, 555 F.3d at 596 (a letter writing campaign is not sufficient to state a § 1983 claim). However, if an administrator turns a blind eye to a problem despite knowing of a serious risk to an inmate's health or well-being, then he or she may face § 1983 liability. *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) (an administrator cannot turn a blind eye to knowledge of an ongoing harm, and they cannot entirely shirk the duty to render aid). The line between deferring to correctional staff or turning a blind eye is a fine one. Here, Plaintiff's allegations will be allowed to proceed against Defendant Crow at this early juncture on the theory that he has repeatedly corresponded with Crow but Crow has ignored his needs. Ultimately, if it turns out that Crow was not aware of this correspondence, it is possible that this claim will fail.

By contrast, as to Defendant Buchanon, Plaintiff's allegations are insufficient to state a claim. His only allegation against Buchanon is that Buchanon insists that Pinckneyville is a smoke-free prison. This allegation does not provide enough information for the Court to plausibly infer that Buchanon has somehow knowingly and deliberately violated Plaintiff's rights. Accordingly, Plaintiff's claim against Buchanon is dismissed without prejudice as insufficiently pled.

In Claim 2, Plaintiff alleges that on September 5, 2023, Defendant Jane Doe did not perform any tests when he presented to the medical unit for difficulty breathing from smoke exposure. He says that Jane Doe told him to file a request for a housing change, but he never got a housing change. This series of events is insufficient to infer deliberate indifference on behalf of Jane Doe. An inmate cannot demand specific treatment, so the suggestion that Jane Doe needed

to perform testing does not substantiate a claim. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (an inmate cannot demand specific care). Plaintiff does not explicitly say that Jane Doe did nothing for his symptoms on that day, instead, he complains only that she told him to request a housing change, but his housing has not been changed. It is unlikely that the prison nurse is the one with authority to implement a cell change, so Plaintiff cannot proceed against Jane Doe for failing to change his housing assignment. He also does not allege that she was ever made aware of ongoing problems for him with housing or smoke exposure. Without more information about the severity or duration of his symptoms, or any steps Jane Doe might have taken to mitigate those at the time of the encounter, Plaintiff has not stated a sufficient claim against Jane Doe to proceed beyond initial review.

The Court notes that in addition to the Second Amended Complaint (Doc. 19), Plaintiff submitted two letters on November 22, 2023. The Court reviewed both. In the first, Plaintiff complains that he continues to be exposed to secondhand smoke, which is worsening his health, and which prevents him from accessing the dayroom. He alleges that Defendant Buchanon told him to refuse housing multiple times, but he also claims Buchanon has never said such a thing. (Doc. 20). He again discusses his desire for parole, or for a transfer to Hill Correctional Center so that he can be closer to family. The contents of this letter do not change the above analysis of Plaintiff's second amended complaint. The Court additionally notes that piecemeal correspondence of this nature is not a sufficient way to amend the complaint and should not be transmitted to the Court.

Plaintiff's second letter (Doc. 21) is an inquiry into the issuance of any e-filed documents since October 6, 2023. There have been no documents issued from that date until this Order, so he is not missing anything in this case.

**DISPOSITION**

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives initial screening as described above against Defendants Miflin, Mezzo and Crow. By contrast, Plaintiff may not pursue **Claim 1** against Defendant Buchanon, and he may not pursue **Claim 2** against Jane Doe. There are no sufficient allegations against Defendant Latoya Hughes. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Buchanon, Jane Doe and Hughes because Plaintiff has failed to plead a sufficient claim against them.

The Clerk of Court is **DIRECTED** to prepare for Defendants Miflin, Mezzo, and Crow: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

Dated: November 28, 2023

/s/ Reona J. Daly
**Reona J. Daly**
**United States Magistrate Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures.

Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.